IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARGARET J. LUSKO,           *

      Plaintiff,             *

v.                         *      Civil Action No. GLR-23-3168

NEWREZ, LLC & COMMUNITY  *
LOAN SERVICING, LLC,
                           *

      Defendants.

*\*\*

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Newrez, LLC's ("Shellpoint") Motion to Dismiss (ECF No. 11), and Defendant Community Loan Servicing, LLC's ("CLS") Motion to Dismiss (ECF No. 12). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant CLS's motion, and grant Shellpoint's motion in part and deny it in part.

## I.    BACKGROUND[1]

### A.   <u>Factual Background</u>

Plaintiff Margaret Lusko is an individual residing in Anne Arundel County, Maryland. (Compl. ¶ 1, ECF No. 1). Lusko is elderly and on a fixed income. (<u>Id.</u> ¶ 17). Lusko's principal residence is 112 Summer Village Drive, Annapolis, Maryland 21401

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 7) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

("Subject Property"). (Id. ¶ 1). She is the Trustee of the Margaret J Lusko Living Trust (the "Trust") dated March 13, 1997. (Id.).

On or about November 10, 2000, Lusko purchased the Subject Property, and subsequently transferred ownership to the Margaret J Lusko Living Trust. (Id. ¶ 11). On April 18, 2007, Lusko obtained a deed of trust with Bank of America in the amount of $516,000. (Id. ¶ 12). Over the years, several entities assigned its rights to the deed of trust. (Id. ¶¶ 13–16).

The dispute giving rise to the instant action began in 2022. Following Lusko's participation in a COVID deferral program, she received a loan modification notice from CLS for the mortgage on the Subject Property. (See id. ¶ 18). Under the loan modification, the Trial Period Plan ("TPP") required Lusko to make three monthly payments in the amount of $2,563.64 with the first payment due by May 1, 2022. (Id.). On April 29, 2022, she made her first TPP payment to CLS in the amount of $2,563.64. (Id. ¶ 19). On June 1, 2022, she made her second payment to CLS in the amount of $2,563.64. (Id. ¶ 20).

On or about June 9, 2022, Shellpoint sent Lusko a notice informing her that it would now be servicing her mortgage, and that it expected to receive a TPP payment to cover June. (Id. ¶¶ 21–22). Weeks earlier, however, Lusko already paid the June TPP payment to CLS. (Id.). In other words, Lusko did not receive Shellpoint's notice that it was the new mortgage servicer until June 9, 2022, and by then, she had already paid CLS on June 1, 2022. (Id. ¶ 22). On July 1, 2022, Lusko scheduled the third TPP payment with a representative of Shellpoint. (Id. ¶ 23).

On or about July 26, 2022, Shellpoint notified Lusko that she was behind on her mortgage payments and of Shellpoint's "right to invoke foreclosure." (Id. ¶ 24). Lusko tried to resolve the issue with Shellpoint directly but retained counsel after those efforts failed. (Id. ¶ 25). On September 26, 2022, Lusko's counsel notified both CLS and Shellpoint that Lusko had representation and issued a litigation hold demand. (Id. ¶ 26).

On November 1, 2022, Shellpoint sent Lusko's counsel, Megan Roberts, a notice confirming that: (1) Lusko made the first and second TPP payments to CLS on April 29, 2022 and June 1, 2022, respectively; (2) Lusko scheduled her third TPP payment with a Shellpoint representative for drafting on July 14, 2022; and (3) Shellpoint would treat the July 14, 2022 payment as satisfaction of the third and final required TPP payment.  (Id. ¶ 27). After receiving this notice, Roberts attempted to reach Ebony Jones, Lusko's Single Point of Contact at Shellpoint, to discuss the payment terms and obtain a copy of the final loan modification agreement. (Id. ¶¶ 28–33). But for several weeks, Jones did not return phone calls or emails. (Id.).

Finally, on December 6, 2022, Jones responded to Roberts. (Id. ¶ 34). Jones stated that "[t]he modification was cancelled due to nonpayment," and that Shellpoint "had to close out modification because the third [TPP] payment wasn't received." (Id.).

On December 7, 2022, Shellpoint's counsel, BWW Law Group ("BWW"), sent correspondence to Roberts. (Id. ¶ 35). Roberts informed BWW of the attempts to resolve the alleged issues with Lusko's loan, noted that Lusko would like to bring her modified account current, and requested payment information and a copy of the final loan modification agreement. (Id. ¶ 36). Shortly after communicating with BWW, Jones

3

emailed Roberts that Lusko's "modification can be processed with the [TPP] payment due for July in the amount of $2,563.64." (Id. ¶ 37). Jones further explained that this payment "will activate the modification date for the approved modification effective 9/1/22. The additional payments will be due immediately once we determine the amount of the modification payments. The total number of payments will be around 5 depending on the executed date." (Id.). Roberts then asked Jones for the amount currently owing, payment instructions, and a copy of the loan modification agreement. (Id. ¶ 38). Jones never sent these documents. (See id. ¶ 49).

On January 30, 2023, Matt Cohen from BWW informed Roberts that the third TPP payment was never received and that Lusko's third TPP payment was returned to Lusko. (Id. ¶ 41). Lusko alleges that Shellpoint has not been able to provide a date for when the third TPP payment was allegedly returned to her. (Id. ¶ 42). On February 7, 2023, Roberts sent a copy of Lusko's bank statements evidencing her second and third TPP payments. (Id. ¶¶ 43–44). On September 26, 2023, Cohen notified Roberts that CLS never received Lusko's second TPP payment. (Id. ¶ 47).

Throughout this process, Shellpoint continued to mail foreclosure notices to Lusko. (Id. ¶ 50). Lusko alleges that both Shellpoint and CLS have acknowledged receipt of all three TPP payments and that she has provided proof of these payments through bank statements. (Id. ¶ 48). Despite her requests, Lusko alleges that she still has not received a copy of the loan modification agreement or a total amount owed as part of the finalization of the contemplated loan modification. (Id. ¶ 49). On October 17, 2023, Lusko received an

affidavit by Alfonso Ramirez from Shellpoint as part of the foreclosure initiation process. (Id. ¶ 51). In it, Ramirez attests that Lusko has only made one TPP payment. (Id.).

**B.**    **Procedural History**

On November 20, 2023, Lusko filed this lawsuit against CLS and Shellpoint. (ECF No. 1). The five-count Complaint alleges: violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C § 1692e et seq. (Count I); violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §14-201 et seq. (Count II); violation of the Maryland Consumer Protection Act, Maryland Code Ann., Comm. Law §13-301 et seq. (Count III); breach of contract (Count IV); and negligence (Count V). (Compl. ¶¶ 53–96). Lusko seeks damages in excess of $75,000, punitive damages, and reasonable costs and attorneys' fees. (Compl. at 11, 12, 14, 16).[2] As relief for her breach of contract claim, Lusko seeks a declaratory judgment from this Court directing CLS to reinstate the loan modification agreement. (Id. at 15). On January 24, 2024, Shellpoint filed a Motion to Dismiss (ECF No. 11), and CLS filed a separate Motion to Dismiss (ECF No. 12). On February 7, 2024, Lusko filed an Opposition to Shellpoint's Motion, (ECF No. 13), and a separate Opposition to CLS's Motion, (ECF No. 14). On February 21, 2024, Shellpoint filed a Reply, (ECF No. 16), and on February 28, 2024, CLS also filed its Reply, (ECF No. 18).

---

[2] The prayers for relief are not stated in paragraph form, so the Court cites to Lusko's page numbers here. Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.

## II.   DISCUSSION

**A.   <u>Standard of Review</u>**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs of Davidson Cnty.</u>, 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid

6

of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

**B.    <u>Analysis</u>**

**1.    Count I – Fair Debt Collection Practices Act**

Lusko first alleges that CLS and Shellpoint violated the FDCPA because CLS and Shellpoint "falsely and deceptively represented to Plaintiff that she did not make her three TPP payments despite evidence to the contrary," and that she has suffered losses as a result. (Compl. ¶¶ 58–61).

The FDCPA is a strict liability statute that safeguards consumers from abusive, coercive, and deceptive debt collection practices by debt collectors. <u>See</u> 15 U.S.C. § 1692k(a); <u>Spencer v. Hendersen-Webb, Inc.</u>, 81 F.Supp.2d 582, 590–91 (D.Md. 1999). To state a claim under the FDCPA, a plaintiff must allege that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." <u>Sterling v. Ourisman Chevrolet of Bowie Inc.</u>, 943 F.Supp.2d 577, 585 (D.Md. 2013) (alteration in original) (quoting <u>Stewart v. Bierman</u>, 859 F.Supp.2d 754, 759–60 (D.Md. 2012)). For purposes of the FDCPA, a "debt collector" is an entity that "regularly collects or attempts to collect, directly or indirectly, [consumer] debts owed [to] another." <u>Heintz v. Jenkins</u>, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. § 1692a(6)) (cleaned up).

As set forth above, the FDCPA is a strict liability statute, "impos[ing] liability on any debt collector who fails to comply with any provision of the Act." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012) (internal quotation marks omitted) (quoting 15 U.S.C. § 1692k(a)). A consumer must only prove one violation to trigger liability. Liversage v. Nationwide Debt Mgmt. Sols., LLC, No. ELH-15-1266, 2016 WL 106301, at *3 (D.Md. Jan. 11, 2016). "[T]hus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437–38 (2d Cir. 2018). Rather, "[d]ebt collectors may not make false claims, period." Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004). In other words, a debt collector may violate the FDCPA even if it unintentionally makes a false statement. Turner v. J.V.D.B. & Assocs., 330 F.3d 991, 995 (7th Cir. 2003) ("[U]nder § 1692e ignorance is no excuse."); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996) ("[A] consumer need not show intentional conduct by the debt collector to be entitled to damages."). But cf. Randolph, 368 F.3d at 730 ("In lieu of a scienter requirement, the FDCPA provides a defense 'if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" (quoting 15 U.S.C. § 1692k(c))).

### a.   Shellpoint's Arguments

Shellpoint argues that Lusko's claims under the FDCPA fail because: (1) Lusko and the Trust lack standing; (2) Lusko fails to allege Shellpoint is a debt collector; (3) Lusko fails to allege the TPP payments and mortgage qualify as debt under the FDCPA; (4) Lusko

fails to allege Shellpoint's communications were an attempt to collect debt; and (5) Lusko fails to allege Shellpoint made any material representations. (Def.'s Mem. Supp. Mot. Dismiss ["Shellpoint Mot."] at 8–16, ECF No. 11). The Court will address each argument in turn.

### i.    Standing

As an initial matter, Shellpoint contends that Lusko lacks standing because she does not allege a concrete or particularized harm because of the alleged FDCPA violation. (Shellpoint Mot. at 8). An injury in fact must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Here, Lusko's claims are particularized and concrete because they center on Shellpoint's wrongful initiation of foreclosure proceedings against the Subject Property where she resides. (Compl ¶¶ 10–52). Accordingly, Lusko has standing to bring a claim.[3]

### ii.    Debt Collector Status

Shellpoint next argues that Lusko fails to allege that Shellpoint is a debt collector. (Shellpoint Mot. at 10; Shellpoint Reply Supp. Mot. Dismiss ["Shellpoint Reply"] at 6 n.4, ECF No. 16). Lusko counters that Shellpoint is a debt collector because in her Complaint,

---

[3] Shellpoint also contends the Trust lacks standing under the FDCPA because a Trust is not a consumer. (Shellpoint Mot. at 9). The Court agrees. The FDCPA defines consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The Trust is not a natural person. Accordingly, the Court will only address Lusko's claims in her individual capacity.

she identifies Shellpoint as a loan servicer who holds a "Maryland Mortgage Lender license and a Maryland Collection Agency License." (Pl.'s Mem. Supp. Opp'n to Def.'s Mot. to Dismiss ["Opp'n Shellpoint Mot."] at 15, ECF No. 14; Compl. ¶¶ 2, 4).

Mortgage servicing companies are exempt from the definition of "debt collectors" under the FDCPA only "to the extent that they take action to collect debts that were not in default at the time they acquired the debts." Ayres v. Ocwen Loan Servicing, LLC, 129 F.Supp.3d 249, 277 (D.Md. 2015). "[The] exception, which may operate to remove a loan servicer from the definition of a 'debt collector', does not apply if the loan was in default at the time it was acquired by the servicing company, or if the servicing company treated it as such." Id. (emphasis in original).

Here, Shellpoint directed Lusko to make all payments to it starting on June 1, 2022, but failed to put her on notice of this change until June 9, 2022. (Compl. ¶¶ 21–22). By that point, she already paid June's mortgage to CLS. (Id. ¶ 22) A month later, Shellpoint notified Lusko that she was behind on payments. (Id. ¶ 24). On these facts, Shellpoint treated the loan as if Lusko was in "default" and is therefore a debt collector as contemplated by the FDCPA. See Ayres, 129 F.Supp.3d at 277 ("On December 6, 2011, just one month after [the defendant] began servicing the account, it notified the Plaintiffs that payments were past due and the account was in default. These allegations are sufficient to plead that [the defendant] is a debt collector under the FDCPA."). Therefore, at this stage, Lusko's allegations are sufficient to plead that Shellpoint is a debt collector under the FDCPA.

### iii.    Debt under the FDCPA

Shellpoint next argues that Lusko fails to allege that Shellpoint attempted to collect a consumer debt because the mortgage was discharged in bankruptcy. (Shellpoint Mot. at 11). Shellpoint additionally argues that the TPP payments are not covered debts by the FDCPA because the TPP payments do not create an obligation. (Id. at 12). Lusko counters that the mortgage qualifies as a debt under the FDCPA because "[t]he loan was for the Subject Property which is solely used for Plaintiff's personal purposes, specifically, Plaintiff resides at the Subject Property." (Opp'n Shellpoint Mot. at 16). She further argues the TPP payments are also covered debts under the FDCPA because "the TPP payments go towards payment of the loan – an existing obligation." (Id. at 17).

The FDCPA defines a "debt" as:

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). The Court finds the mortgage on the Subject Property qualifies as a debt under the FDCPA. See Farber v. Brock & Scott, LLC, No. TDC-16-0117, 2016 WL 5867042, at *9 (D.Md. Oct. 6, 2016) (finding discharged debtor's mortgage qualified as debt under FDCPA because "the [plaintiff] continued to have an 'obligation or alleged obligation' to pay money arising out of a transaction for family or household purposes, with the consequence that failure to pay would result in loss of possession and title to the Property," and "[t]his conclusion is consistent with the FDCPA's

11

remedial purpose."); Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 393 (4th Cir. 2014) (recognizing the FDCPA is a remedial statute and must be construed broadly). To the extent Shellpoint argues the TPP payments are not debt under the FDCPA because they do not create an "obligation," the single case Shellpoint cites in support did not occur within the context of a FDCPA claim. See Stovall v. SunTrust Mortg., Inc., No. RDB-10-2836, 2011 WL 4402680 (D.Md. Sept. 20, 2011). Accordingly, the Court finds Lusko has alleged the mortgage and TPP payments qualify as debt under the FDCPA.

### iv.   Attempt to Collect Debt under the FDCPA

Shellpoint next argues its communications were not an attempt to collect debt but rather were for only informational purposes because Lusko's mortgage was discharged in bankruptcy. (Shellpoint Mot. at 12–13). To fall within the FDCPA, a statement must be made "in connection with the collection of a debt." Finley v. Mortg., No. 18-11176, 2018 WL 6445691, at *3 (E.D.Mich. Dec. 10, 2018). "Although there is no bright-line rule, [d]etermining whether a communication constitutes an attempt to collect a debt is a 'commonsense inquiry' that evaluates the 'nature of the parties' relationship,' the '[objective] purpose and context of the communication [  ],' and whether the communication includes a demand for payment." Lovegrove v. Ocwen Home Loans Servicing, L.L.C., 666 F.App'x 308, 311 (4th Cir. 2016) (quoting In re Dubois, 834 F.3d 522, 527 (4th Cir. 2016)) (some internal quotations omitted).

Here, Shellpoint relies on the initial TPP agreement that CLS sent Lusko cautioning that the "TPP was for informational purposes only" as evidence that its subsequent communications to Lusko were not an attempt to collect debt under the FDCPA.

12

(Shellpoint Mot. at 12; March 30, 2022 Loan Modification Agreement ["Mod. Agreement"] at 10, ECF No. 11-11). At bottom, the Court finds this disclaimer is not a complete bar to Lusko's FDCPA claims against Shellpoint at this stage of the litigation.

To be sure, the initial TPP agreement CLS sent Lusko includes a disclaimer similar to one the United States Court of Appeals for the Fourth Circuit encountered in Lovegrove; namely, the notice CLS sent clarified that "to the extent your original obligation was discharged . . . this notice is for compliance with non-bankruptcy law and/or informational purposes. It does not constitute an attempt to collect debt, to reaffirm a debt, or to impose any personal liability on you." (Mod. Agreement at 10).[4] In Lovegrove, the Court held the presence of such a disclaimer "establish[ed] that [the defendant's communications] were not in connection with the collection of a debt under [plaintiff]'s circumstances." 666 F. App'x at 311. But here, unlike in Lovegrove, the record is not clear as to whether this disclaimer was in all of Shellpoint's communications to Lusko. For instance, Lusko alleges that on July 1, 2022, she spoke over the phone with a Shellpoint representative about scheduling a third TPP payment, (Compl. ¶ 23), but beyond that, the Court cannot

---

[4] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the Loan Agreement is integral to the Complaint, which expressly references the Loan Agreement, and there is no dispute as to its authenticity. Accordingly, the Court will consider these documents.

determine whether that conversation also included similar disclaimer language. The same applies for the "numerous" other attempts Lusko made to "resolve the matter with Shellpoint directly." (Id. ¶ 25).

In cases where courts have held a bankruptcy disclaimer removes FDCPA liability, the defendant includes readily identifiable bankruptcy disclaimers in all its communications. See e.g., Finley, at *3 ("[A]s the very first word of each statement, in all capital letters, makes clear, the animating purpose of the statements was 'INFORMATIONAL.'"). Furthermore, the Fourth Circuit has cautioned against overreliance on its decision in Lovegrove where the record is unclear about whether the disclaimer was in all alleged communications. See Guthrie v. PHH Mortg. Corp., 79 F.4th 328, 343 (4th Cir. 2023), cert. denied, 144 S.Ct. 1458 (2024) (reversing grant of summary judgment on state debt collection claim because "while the record contains but a few transcripts of [] calls [between defendant and plaintiff], none contain disclaimer language."). At this stage, the Court finds Lusko has pleaded sufficient facts to allege that Shellpoint's communications were an attempt to collect debt.

**v.      Material Misrepresentations**

Shellpoint next argues that its communications to Lusko did not contain material misrepresentations. (Shellpoint Mot. at 13). Lusko counters that "Shellpoint violated the FDCPA by making misrepresentations of the character and amount of Plaintiff's loan and loan payments, threatening to take an action that could not be legally [] taken, and using false representation to collect a debt." (Opp'n Shellpoint Mot. at 18).

"Among other things, the FDCPA prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,' and from using 'unfair or unconscionable means to collect or attempt to collect any debt.'" In re Dubois, 834 F.3d at 527 (quoting 15 U.S.C. §§ 1692e–1692f). Courts evaluate whether a communication is materially false or misleading from the perspective of the least sophisticated consumer. Stewart v. Bierman, 859 F.Supp.2d 754, 761 (D.Md. 2012), aff'd sub nom, 528 F.App'x 297 (4th Cir. 2013). Courts applying the standard "consider how a 'naive' consumer would interpret the statement," but "do not give credit to 'bizarre or idiosyncratic interpretations'; [courts] assume 'a quotient of reasonableness and . . . a basic level of understanding and willingness to read with care.'" Elyazidi v. SunTrust Bank, 780 F.3d 227, 234 (4th Cir. 2015) (quoting United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)).

Judging from the perspective of the least sophisticated consumer, the Court finds Lusko sufficiently alleges that at least one of Shellpoint's communications were materially misleading. All Lusko wanted was to successfully complete the Trial Period Plan, and as she alleges, she did. (Compl. ¶ 23). But even after making the three TPP payments, Shellpoint's communications continued to be misleading. First, on November 1, 2022, Shellpoint conceded that Lusko made all three TPP payments, but then, on December 6, 2022, contradicted itself by insisting that Lusko did not pay the third TPP payment. (Id. ¶¶ 27, 34). This continued even after Lusko provided bank statements showing evidence of the TPP payments. (Id. ¶¶ 43, 45, 48). All the while, "Shellpoint repeatedly sent foreclosure notices to Plaintiff, an elderly vulnerable adult." (Id. ¶ 50). Beyond these

specific correspondences, Lusko alleges a series of other communications involving her attorney and Shellpoint, all related to the TPP payments. (Id. ¶¶ 26–47).[5]

"The materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'" Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 126 (4th Cir. 2014) (quoting Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th Cir. 2010)). Here, Lusko contends "Shellpoint's representations were genuinely (and knowingly) false statements that frustrated Plaintiff's ability to intelligently choose how to proceed." (Opp'n Shellpoint Mot. at 18). If Lusko was armed with the correct information with respect to her TPP payments, she may not have been "forced to retain [counsel] with respect to resolving Plaintiff's mortgage and Shellpoint's threatening letters." (Id. at 6). At this stage, the Court finds that Lusko has pleaded sufficient facts to allege that at least one violation of the FDCPA has occurred. See Liversage, 2016 WL 106301, at *3 ("A consumer must only prove one violation to trigger liability."). Accordingly, Shellpoint's Motion to Dismiss is denied as to Count I.[6]

---

[5] Shellpoint argues communications it made to Lusko's attorney are not actionable under the FDCPA. (Shellpoint Mot. at 17–18). The law in this Circuit holds otherwise. See Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 233 (4th Cir. 2007). ("[P]lainly, the FDCPA covers communications to a debtor's attorney.").

[6] The Court additionally rejects Shellpoint's bona-fide error defense, (Shellpoint Mot. at 17), because "the errors that may insulate a defendant from liability are generally limited to clerical mistakes," which does not appear to be the case here. Trice v. Oliveri & Assocs., LLC, No. GLR-19-3272, 2022 WL 36451, at *7 n.8 (D.Md. Jan. 4, 2022).

####          b.     CLS's Arguments

CLS argues that Lusko fails to allege sufficient facts with respect to whether it violated the FDCPA because Lusko's Complaint does not identify any alleged misrepresentations made by CLS. (Def.'s Mem. Supp. Mot. Dismiss ["CLS Mot."] at 5, ECF No. 12). The Court agrees.

Apart from alleging that CLS offered the loan modification plan, (Compl. ¶ 18), Lusko fails to identify any specific communications CLS made to Lusko, much less any that were false or misleading. At one other point in her Complaint, Lusko vaguely alleges that "[d]espite Plaintiff's numerous requests and ability to pay, neither [CLS] nor Shellpoint ever sent Plaintiff a copy of the loan modification agreement and/or a total owed as part of the finalization of the contemplated loan modification," (Compl. ¶ 49), but the Complaint does not allege facts describing CLS's refusal to provide such documents. Lusko also contends that CLS's transfer of the loan to Shellpoint "during the middle of the TPP is believed a violation of the TPP and the law generally and likely led to avoidable confusion," (Id. ¶ 52), but fails to provide any support for this claim.

Lusko focuses almost exclusively on the actions of Shellpoint. (See generally Compl.). Lusko cannot "lump all the defendants together and fail to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." Classen Immunotherapies, Inc. v. Biogen IDEC, 381 F.Supp.2d 452, 455 (D.Md. 2005) (cleaned up).[7] Because Lusko fails to sufficiently allege facts with respect

---

[7] Near the end of the FDCPA section of her Complaint, Lusko groups CLS and Shellpoint together in her allegations. (Compl. ¶¶ 56–59). Lusko contends these averments

to any of CLS's alleged misrepresentations, Lusko's FDCPA claim is dismissed. For all the same reasons, Lusko's claims under state consumer protection statutes, the MCDCA and MCPA, must also be dismissed as to CLS. Accordingly, Lusko's claims as to CLS for Counts I, II, and III are dismissed.[8]

### 2.     Count 2 – Maryland Consumer Debt Collection Act

Lusko next alleges Shellpoint engaged in violations of the MCDCA. (Compl. ¶¶ 62–71). Shellpoint counters that Lusko fails to state a claim under the MCDCA because it believed it had the right to foreclose on the Subject Property. (Shellpoint Mot. at 16–17).

Under the MCDCA, a debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Stewart, 859 F.Supp.2d at 769 (quoting Md. Code Ann., Com. Law ("CL") § 14-202(8)), aff'd sub nom., Lembach v. Bierman, 528 F.App'x 297 (4th Cir. 2013). Thus, to state a claim under § 14-202(8) of the MCDCA, Plaintiffs must establish two elements: "(1) that [d]efendants did not possess the right to collect the amount of debt sought; and (2) that [d]efendants attempted to collect the debt knowing that they lacked the right to do so." Lewis v. McCabe, Weisberg & Conway, LLC, No. DKC-13-1561, 2014 WL 3845833, at *6 (D.Md. Aug. 4, 2014).

"Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with

---

are enough to state a claim. (Pl's Opp'n Def's Mot. Dismiss at 14, ECF No. 13). The Court disagrees. See Iqbal, 556 U.S. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[8] Because the Court rejects Lusko's FDCPA claims as to CLS on the merits, it declines to address CLS's argument that Lusko's claim is time-barred (CLS Mot. at 5).

reckless disregard as to its validity.'" <u>Lembach</u>, 528 F.App'x at 304 (quoting <u>Shah v. Collecto, Inc.</u>, No. DKC-2004-4059, 2005 WL 2216242, at \*11 (D.Md. Sept. 12, 2005)); <u>see also</u> <u>Akalwadi v. Risk Mgmt. Alts., Inc.</u>, 336 F.Supp.2d 492, 511 (D.Md. 2004) (explaining that the plaintiff must show the defendant acted with actual knowledge or reckless disregard as to the falsity of the information to be liable under the MCDCA). In other words, "[u]nlike the FDCPA, the MCDCA is not a strict liability statute; to state a cognizable claim, the plaintiffs also must demonstrate that [the defendant] knowingly attempted to collect an amount that included an unauthorized charge." <u>Ben-Davies v. Blibaum & Assocs., P.A.</u>, 421 F.Supp.3d 94, 100 (D.Md. 2019).

The crux of the issue here is scienter, which is what most notably distinguishes the MCDCA from its federal counterpart. <u>See</u> <u>Alexander v. Carrington Mortg. Servs., LLC</u>, 23 F.4th 370, 375–76 (4th Cir. 2022). Shellpoint argues that it did not act with knowledge that it lacked the right to foreclose because "its records indicated that Ms. Lusko did not make all of the required TPP payments." (Shellpoint Mot. at 18). Lusko counters that "Shellpoint had knowledge that Plaintiff timely made her three TPP payments as acknowledged in Shellpoint's November 1, 2022 correspondence and later reaffirmed when Shellpoint was provided with Plaintiff's bank statements evidencing the payment of the disputed TPP payments." (Opp'n Shellpoint Mot. at 21–22; Compl. ¶¶ 27, 43–45).

At this stage, the Court finds Lusko has alleged sufficient facts to state a claim under the MCDCA. Shellpoint continued to send foreclosure notices to Lusko and altogether deny receipt of at least one TPP payment even after Lusko provided evidence of the three TPP payments with bank statements, and even after Shellpoint acknowledged receipt of all

19

three payments. (Compl. ¶¶ 43, 45, 48). The Court cannot, at this point, determine as a matter of law that Shellpoint lacked knowledge of all three payments when Lusko sufficiently alleges precisely the opposite. Accordingly, Shellpoint's Motion to Dismiss as to Count II is denied.

### 3.    Count 3 – Maryland Consumer Protection Act

Lusko next alleges Shellpoint engaged in violations of the MCPA. (Id. ¶¶ 72–82). Shellpoint asserts that Lusko has failed to allege sufficient facts to state a claim under the MCPA. (Shellpoint Mot. at 18–20).

The Maryland Consumer Protection Act ("MCPA") generally prohibits unfair, abusive, or deceptive trade practices in:

> (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;
> (2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;
>
> (3) The offer for sale of course credit or other educational services;
>
> (4) The extension of consumer credit;
>
> (5) The collection of consumer debts; or
>
> (6) The purchase or offer for purchase of consumer goods or consumer realty from a consumer by a merchant whose business includes paying off consumer debt in connection with the purchase of any consumer goods or consumer realty from a consumer.

CL § 13-303. The MCPA allows a plaintiff to "bring an action to recover for injury or loss sustained by [her] as a result of a practice prohibited by this title." Donalds v. Ethicon, Inc., No. GLR-20-1659, 2021 WL 6126297 (D.Md. Dec. 28, 2021) (quoting CL § 13-408(a)).

Here, Shellpoint raises much of the same arguments it stated previously with respect to the FDCPA and MCDCA claim; mainly, that its records simply did not reflect that Lusko made all three payments. (Shellpoint Mot. at 18). But because "[a]n MCDCA violation 'is also a per se violation' of the MCPA," and the Court found that Lusko has stated a claim under the MCDCA, the Court declines to dismiss Lusko's MCPA claim as to Shellpoint at this stage in the litigation. Alexander v. Carrington Mortg. Servs., LLC, 23 F.4th 370, 373 (4th Cir. 2022) (quoting Andrews & Lawrence Pro. Servs., LLC v. Mills, 223 A.3d 947, 950 (Md. 2020)). Accordingly, Shellpoint's Motion to Dismiss as to Count III is denied.

### 4.    Count 4 – Breach of Contract

Lusko next alleges that Shellpoint and CLS "breached the loan modification offer by failing to permanently modify Plaintiff's mortgage payments and by inexplicably claiming that Plaintiff failed to make her TPP payments in a timely manner." (Compl. ¶ 87). She seeks a declaratory judgment order enforcing the mortgage modification with Lusko's monthly mortgage payments being due to Shellpoint in the amount of $2,563.64, along with reasonable costs and attorneys' fees. (Id. at 15).

Maryland law appears to apply to Lusko's breach of contract claim. "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." State Auto. Mut. Ins. Co. v. Lennox, 422 F.Supp. 3d 948, 961 (D.Md. 2019). For contract claims, "Maryland applies the law of the state in which the contract was formed . . . unless the parties to the contract agreed to be bound by the law of another state." Id. Here, Lusko

contends the alleged agreement was formed in Maryland, and the parties do not contest that Maryland law applies. The Court will therefore apply Maryland law.

To state a claim for breach of contract in Maryland, a plaintiff "must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." All Weather, Inc. v. Optical Sci., Inc., 443 F.Supp.3d 656, 666 (D.Md. 2020). Further, "[t]he claim must 'allege with certainty and definiteness facts showing a contractual obligation.'" Yarn v. Hamburger L. Firm, LLC, No. RDB-12-3096, 2014 WL 2964986, at *3 (D.Md. June 30, 2014) (quoting RRC Ne., LLC v. BAA Md., Inc., 994 A.2d 430, 442 (Md. 2010)). Maryland courts follow the "basic contract principle" that a contractual obligation cannot exist without "an offer by one party and an unconditional acceptance of that precise offer by the other." Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc., 988 F.Supp.2d 542, 550 (D.Md. 2013) (quoting Lemlich v. Bd. of Trs. of Harford Cmty. Coll., 385 A.2d 1185, 1189 (Md. 1978)), aff'd, 588 F.App'x 213 (4th Cir. 2014). In other words, "[i]t is essential that the minds of the parties be in agreement on material terms in order for a contract to be established." Id. at 551.

Here, the Court finds no contract was formed because the TPP "contain[s] clear qualifying language that falls short of the definiteness required to make a contract." Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 778 (4th Cir. 2013). The terms of the TPP agreement here provided that the loan modification would not be provided until, among other requirements, Lusko (1) signed the loan modification agreement and (2) the

servicer countersigned the agreement. (Mod. Agreement at 3).[9] Because neither event has occurred, Lusko's breach of contract claim fails. See Spaulding, 714 F.3d at 778 (recognizing where the language in an agreement "makes clear that further action was required on the part of [the defendant] before an offer would be extended," there is no contract). Accordingly, the Court will dismiss Lusko's breach of contract claim (Count IV) against CLS and Shellpoint.

### 5.    Count 5 – Negligence

Lusko next alleges that Shellpoint and CLS acted negligently with respect to the handling of the TPP payments. (Compl. ¶¶ 90–96).

The parties do not dispute that Maryland law applies to the negligence claim. In Maryland, to establish a claim for negligence, the plaintiff must show: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty. Neal v. United States, 599 F.Supp.3d 270, 290 (D.Md. 2022) (cleaned up).

Both CLS and Shellpoint argue that Lusko fails to establish her claim because neither owed a duty to Lusko. (Shellpoint Mot. at 22–23; CLS Mot. at 11). Lusko counters that she has adequately pleaded a negligence claim because CLS and Shellpoint had a duty,

---

[9] As noted, while a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. Here, the Loan Agreement is integral to the Complaint, and there is no dispute as to its authenticity. Accordingly, the Court will consider these documents. See Fed.R.Civ.P. 10(c).

under common law principles, to "maintain, record, and properly credit Plaintiff for her mortgage payments." (Compl. ¶ 91; <u>see also</u> Opp'n Shellpoint Mot. at 27–29). The Court agrees with Shellpoint and CLS.

Here, CLS identifies as a bank, (CLS Mot. at 11), and Shellpoint identifies as a mortgage servicer, (Shellpoint Mot. at 23). This Court has recognized that "[b]anks typically do not have a fiduciary duty to their customers." <u>Jones v. Specialized Loan Servicing, LLC</u>, 2023 WL 1442435, at *7 (quoting <u>Spaulding</u>, 714 F.3d at 778. Further, under Maryland law, a mortgage servicer does not owe a borrower a duty in tort. <u>See</u> <u>Green v. Wells Fargo Bank, N.A.</u>, 927 F.Supp.2d 244, 253 (D.Md. 2013), <u>aff'd</u>, 582 F.App'x 246 (4th Cir. 2014). The Maryland Supreme Court has held that "[a]bsent a duty of care, there can be no liability in negligence." <u>Spaulding</u>, 714 F.3d at 778 (quoting Jacques v. First Nat. Bank of Maryland, 515 A.2d 756, 758 (Md. 1986). Accordingly, the Court will dismiss Lusko's negligence claim (Count V) as to both CLS and Shellpoint.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant CLS's Motion to Dismiss (ECF No. 12). The Court will deny Shellpoint's Motion to Dismiss (ECF No. 11) as to the FDCPA, MCDCA, and MCPA claims (Counts I, II, and III), and grant the Motion to Dismiss as to the negligence and breach of contract claim (Counts IV and V). Shellpoint will answer the Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 1st day of August, 2024.

_____/s/_____
George L. Russell, III
United States District Judge
